IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DAVID JAY HOWINGTON,            )
ID # 928686,                   )
      Petitioner,         )
vs.                            )            No. 3:03-CV-0052-P
                               )
DOUGLAS DRETKE,[1] Director,    )
Texas Department of Criminal    )
Justice, Correctional Institutions Division,  )
      Respondent.         )

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I.  BACKGROUND

**A.  Nature of the Case:** This is a petition for habeas corpus relief filed by a state inmate pursuant to 28 U.S.C. § 2254.

**B.  Parties**: Petitioner is an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID).  Respondent is Douglas Dretke, Director of TDCJ-CID.

**C.  Procedural History:**  On June 3, 1992, the State indicted petitioner for aggravated sexual assault of a child (petitioner's step-daughter) under the age of fourteen in Dallas County.  *See* TR[2]

---

[1]  On August 1, 2003, the Texas Department of Criminal Justice - Institutional Division became the Texas Department of Criminal Justice - Correctional Institutions Division, and Douglas Dretke became the Director of the renamed division. The Court thus substitutes him for Janie Cockrell. *See* Fed. R. Civ. P. 25(d)(1).

[2]  "TR" refers to the state trial record in Cause No. F92-31057-IK.

at 2 (Indictment).  The indictment initially alleged that petitioner unlawfully contacted and pene-

trated the sexual organ of a child with his finger and that he unlawfully contacted the child's sexual

organ with his mouth.  *Id.*  On November 19, 1992, the State amended the indictment to strike the

allegations of finger contact and penetration.  *Id.* at 6.  That same day, petitioner pled *nolo contendere*

to the charged offense.  *See* Statement of Facts, Vol. II at 6 [hereinafter cited as SF-volume # at

page].  The court accepted the plea and placed him on deferred adjudication probation for seven

years.  TR at 12 (Order).

The State moved to adjudicate petitioner's guilt on August 12, 1999, for violations of the

conditions of probation.[3]  *See id.* at 21-22 (Mot. to Proceed with an Adjudication of Guilt).  On May

30, 2000, petitioner pled true to the alleged probation violations and entered into a plea agreement

for a twelve-year sentence[4] wherein he waived his right to appeal.  *Id.*  (Plea Bargain Agreement).

On that same date, the trial court adjudicated petitioner guilty and sentenced him to twelve years

imprisonment.  *Id.* at 30 (Judgment Adjudicating Guilt).

On June 9, 2000, petitioner filed a notice of appeal.  *See Howington v. State*, No. 05-00-

001254-CR, http://www.courtstuff.com/FILES/05/00/05001254.HTM (docket sheet information

generated Mar. 23, 2005) (Official internet site of the Court of Appeals for the Fifth District of

Texas at Dallas) (hereinafter referred to as State Docket Sheet).  On May 23, 2001, the court of

---

[3] Because the specific violations are not at issue in this case, the Court does not list them here.

[4] A trial court in Denton County had also revoked petitioner's deferred adjudication probation, adjudicated him guilty of aggravated sexual assault, and sentenced him to twelve years imprisonment in a different case, Cause No. F-94-0802-A, on March 30, 2000.  *See Howington v. State*, No. 2-00-311-CR, slip op. at 1-2 (Tex. App. – Fort Worth Aug. 31, 2000, pet. ref'd) (copy contained in state court records provided to this Court; Petition for Discretionary Review contained in copy of state court records provided to this Court).  Though it is discussed for context, petitioner does not challenge the Denton County conviction in this action.

appeals dismissed petitioner's timely appeal for lack of jurisdiction.  *See Howington v. State*, Nos. 05-00-01254-CR, 05-00-01255-CR, 2001 WL 541458, at *1-2 (Tex. App. – Dallas May 23, 2001, no pet.)  Although petitioner was granted until August 21, 2001, to file a petition for discretionary review, he filed no such petition.  *See* State Docket Sheet.

On March 11, 2002, petitioner filed a state application for writ of habeas corpus.  S.H. Tr.[5] at 2.  On July 15, 2002, the trial court entered findings of fact and conclusions of law on the state application and recommended that it be denied.  *Id.* at 90-95.  On September 18, 2002, the Texas Court of Criminal Appeals denied the application without written order on the findings of the trial court without a hearing.  *See Ex parte Howington*, No. 51,307-02, slip op. at 1 (Tex. Crim. App. Sept. 18, 2002).

Petitioner filed the instant petition on January 3, 2003, when he placed it in the prison mail system.  (Petition for Writ of Habeas Corpus (Pet.) at 9); *see also Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system).  On March 11, 2003, respondent filed the relevant state court records and an answer with brief in support in which he seeks dismissal of this action as time-barred.  (*See* Answer at 5-12.)  On March 28, 2003, petitioner responded to the time-bar allegation and urged the Court to decline to dismiss the action as untimely.  (*See* Petitioner's Resp. at 1-5.)

**D. Substantive Issues:**  In six grounds for relief, petitioner asserts that (1) the trial court lacked jurisdiction; (2) the State failed to prove an essential element of his offense, namely that he

---

[5] "S.H. Tr." denotes the state habeas records attached to *Ex parte Howington*, No. 51,307-02, slip op. (Tex. Crim. App. Sept. 18, 2002).  Petitioner also filed a state habeas application with respect to his Denton County conviction in Cause No. F-94-0802-A.  *See* State Habeas Records attached to *Ex parte Howington*, No. 51,307-01, slip op. (Tex. Crim. App. Apr. 17, 2002) (hereinafter referred to as S.H. Tr.-Denton).

committed the offense in Dallas County; (3) his 1992 plea was not voluntarily or knowingly entered because he did not understand an element of the offense; (4) he was denied due process and equal access because he was denied his direct appeal; (5) he was tried in violation of the prohibition against ex post facto laws; and (6) his 1992 plea was involuntary due to ineffective assistance of counsel.  (*See* Pet. at 7-8; Mem. attached to Pet. at Grounds 1 through 6.[6])

E.  **Procedural Issues:**  Respondent asserts that petitioner's claims are barred by the statute of limitations in 28 U.S.C. § 2244(d)(1).  (*See* Answer at 3-12.)

## II. APPLICABLE LAW

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA or the Act), Pub. L. 104-132, 110 Stat. 1217.  Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date, which is the date of its enactment. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).  Because petitioner filed the instant petition after the effective date of the AEDPA, the Act applies to his petition.

Title I of the AEDPA substantially changed the way federal courts handle habeas corpus actions.  Under 28 U.S.C. § 2254(d), as amended by the AEDPA, a state prisoner may not obtain relief

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[6]  Due to petitioner's style of page numbering for his memorandum in support of his petition, the Court cites to the memorandum by Ground number, *i.e.*, at Ground 1, etc.

> (2) resulted in a decision that was based on an unreasonable deter-
> mination of the facts in light of the evidence presented in the State court
> proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to proced-ural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of petitioner's state writ constitutes an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). The AEDPA standards enumerated in 28 U.S.C. § 2254(d) thus apply to all claims raised therein.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established fed-eral law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differ-ently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." 529 U.S. at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that princ-iple to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making

the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III.  STATUTE OF LIMITATIONS

Respondent argues that the statute of limitations of 28 U.S.C. § 2244(d)(1) bars consideration of petitioner's claims. (Answer at 5-12.) Section 2244(d)(1) provides that "[a] 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court." It further provides that the limitations period shall run from the latest of four specific dates, including "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *See* 28 U.S.C. § 2244(d)(1)(A).

Respondent argues that in the deferred adjudication context, § 2244(d)(1)(A) commences the limitations period for claims challenging the original proceeding thirty days after the trial court placed petitioner on deferred adjudication probation and petitioner failed to appeal. (Answer at 5-7.) In light of a judicially accepted grace-period for a petitioner whose state judgment became final prior to the enactment of AEDPA, he submits that petitioner thus had until April 24, 1997, to timely file a federal habeas petition challenging the voluntariness of his original plea and the

6

effectiveness of trial counsel with respect to such plea.  (*Id.* at 6.)  Respondent further argues that even if the claims challenging the original plea are not time-barred, the instant petition is also untimely because the court of appeals dismissed petitioner's appeal for lack of jurisdiction; thus, his conviction became final on May 30, 2000, the date he pled true to the probation violations and waived his right to appeal as part of a plea agreement for a twelve-year sentence .  (*Id.* at 8-9.) Respondent finally argues that even if the Court includes the pendency of petitioner's improvidently-filed appeal, the instant petition is still untimely, and he is entitled to no equitable tolling of the limitations period.  (*Id.* at 9-12.)

## A.  Timeliness of Claims Challenging Original Plea

Respondent takes the position that where a petitioner challenges an original plea which resulted in placement on deferred adjudication probation, the relevant state-court "judgment" for purposes of § 2244(d)(1)(A) is the trial court document which placed the petitioner on deferred adjudication probation.  He then argues that in the case, the "judgment" became final thirty days later because the petitioner failed to appeal.  (Answer at 5.)  In support of his position, respondent relies on *Wilkinson v. Cockrell*, 240 F. Supp. 2d 617 (N.D. Tex. 2002).  (*Id.* at 7-8.)  Furthermore, because the courts have construed the enactment of AEDPA on April 24, 1996, as granting a one-year grace period to petitioners whose judgments of conviction became final prior to that date, respondent argues that petitioner had until April 24, 1997, to file a federal petition challenging the voluntariness of original 1992 plea and the effectiveness of counsel with regard to such plea.  (*Id.* at 5-6.)

Until December 2002, the courts in this district were in apparent unanimous agreement in rejecting respondent's theory.  *Daugherty v. Dretke*, No. 3:01-CV-0202-N, 2003 WL 23193260, at

7

*5-8 (N.D. Tex. Dec.24, 2003) (collecting cases that had rejected respondent's theory[7]), *accepted by* 2004 WL 993822 (N.D. Tex. Feb. 12, 2004).  Courts had essentially adopted two rationales for rejecting respondent's theory of untimeliness – one based upon whether placement on deferred adjudication probation constituted "a judgment of a State court" and one based upon when such placement became a final judgment.  *See id.* at *6.  Recently, the District Court in this action also rejected respondent's position based on the first rationale, finding that the order placing the petitioner on deferred adjudication did not constitute a judgment under Texas law.  *See Mitchell v. Dretke*, No. 3:02-CV-0733-P, 2004 WL 1348595, at *2-3 (N.D. Tex. June 14, 2004) (findings and recommendation), *adopted by* 2004 WL 1620530 (N.D. Tex. July 19, 2004).  *Mitchell* is not materially distinguishable from the instant action.

### 1. *District-wide Split of Authority*

Notwithstanding this Court's recent holding in *Mitchell,* respondent urges the Court to follow *Wilkinson v. Cockrell*, 240 F. Supp. 2d 617 (N.D. Tex. 2002).  The apparent district-wide unanimity in rejecting respondent's theory ended in December 2002 when the *Wilkinson* court concluded that "[u]pon further review of the authorities, including legislative history of the habeas corpus statutes, and after a study of the reasoning of the judges of the Southern District [of Texas[8]] . . . respondent's

---

[7]  *See, e.g., Standridge v. Cockrell*, No. 4:02-CV-462-Y, 2002 WL 31045977, at *3 (N.D. Tex. Sept. 10, 2002); *Caldwell v. Cockrell*, No. 4:02-CV-326-A, slip op. (N.D. Tex. Aug. 27, 2002); *Jamme v. Cockrell*, No. 3:01-CV-1370-L, 2002 WL 1878403, at *2-3 (N.D. Tex. Aug. 12, 2002); *Cutrer v. Cockrell*, No. 3:01-CV-0841-D, 2002 WL 1398558, at *2-5 (N.D. Tex. June 26, 2002); *Smith v. Cockrell,* No. 3:02-CV-0503-M, 2002 WL 1268016, at *2 (N.D. Tex. June 3, 2002); *Crenshaw v. Cockrell*, No. 4:01-CV-405-Y, 2002 WL 356513, at *1, 4-5 (N.D. Tex. Mar. 5, 2002); *Davis v. Cockrell*, No. 3:01-CV-1946-D, 2002 WL 226367, at *1-2 (N.D. Tex. Feb. 12, 2002); *Jordan v. Cockrell*, No. 3:01-CV-1162-G, 2001 WL 1388015, at *1-2 (N.D. Tex. Nov. 6, 2001); *Estrada v. Johnson*, No. 3:01-CV-0371-P, 2001 WL 1825827, at *1-2 (N.D. Tex. July 26, 2001).

[8]  The *Wilkinson* decision cited three unpublished decisions out of the Southern District – *Johnson v. Cockrell,* No. H-02-0502, slip op. at 5-7 (S.D. Tex. Sept. 30, 2002); *Clewis v. Cockrell,* No. H-01-1547, slip op. at 7 (S.D. Tex. Sept. 17, 2002); and *Meldon v. Cockrell,* No. H-01-4039, slip op. at 7-9 (S.D. Tex. Aug. 1, 2002).  In *Johnson*, the Southern District

position on this subject is correct." *See id.* at 621 (footnote omitted). The *Wilkinson* court noted that Wilkinson pled guilty and cited to entry of an "Unadjudicated J. on Plea of Guilty or Nolo Contendere & Suspending Imposition of Sentence, signed March 28, 1996." *See id.* at 619. It reasoned that the incarceration of the petitioner before the court "was the product of two judgments" – the first one placed him on deferred adjudication probation and the second one adjudicated him guilty. *Id.* Stating that it could not "discern anything in the text or history of § 2244(d)(1)(A) that would lead to the conclusion that the first judgment is not a 'judgment of a State court' within the meaning of that section", the Court thus concluded, without further discussion, that the first judgment was such a judgment within the meaning of the statute. *Id.* at 621-22.

In the aftermath of *Wilkinson*, courts in this district have disagreed about the validity of respondent's position. *Compare, e.g., Manchen v. Dretke*, No. 4:05-CV-049-A, 2005 WL 910450, at *2 (N.D. Tex. Apr. 19, 2005) (findings and recommendation not yet accepted by District Court reiterating that a "Texas state court's deferred adjudication judgment or order becomes final by the conclusion of direct review or the expiration of the time for seeking such review, notwithstanding the fact that there has been no determination of guilt"); *Brown v. Dretke*, No. 4:04-CV-0870-Y, 2005 WL 440500, at *2 (N.D. Tex. Feb. 22, 2005) (same); *Wilson v. Dretke*, No. 3:02-CV-2734-K, 2005 WL 170718, at *2 (N.D. Tex. Jan. 21, 2005) (holding that a conviction in the deferred adjudication probation context becomes final "30 days after the order placing [the defendant] on deferred adjudi-

---

cited *Manuel v. State*, 994 S.W.2d 658 (Tex. Crim. App. 1999) and *Webb v. State*, 20 S.W.3d 834, 836 n.2 (Tex. App. – Amarillo 2000, no pet. h.) for the proposition that "a defendant *placed* on deferred adjudication community supervision must appeal any issue relating to the original plea hearing at the time he is *placed* on deferred adjudication." *Johnson*, slip op. at 7 (emphasis added). Each of these three cases expressly noted that the trial court had issued an *order* deferring adjudication of guilt and placing petitioner on deferred adjudication probation; however, each case found, without discussion or explanation, that the petitioner had not appealed this *judgment*.

cation probation") *with, e.g., Patrick v. Dretke,* No. 3:01-CV-1683-N, 2004 WL 915591, *4 n.9 (N.D.

Tex. Apr. 28, 2004) (findings and recommendation rejecting respondent's position on the deferred

adjudication issue), *accepted by* 2004 WL 1108500 (N.D. Tex. May 14, 2004); *Daugherty v. Dretke,*

No. 3:01-CV-0202-N, 2003 WL 23193260, at *5-8 (N.D. Tex. Dec.24, 2003) (findings and recom-

mendation rejecting respondent's position and distinguishing *Wilkinson*), *accepted by* 2004 WL

993822 (N.D. Tex. Feb. 12, 2004); *see also, Chandler v. Cockrell,* No. 4:03-CV-241-Y, 2003 WL

22077881, at *2 (N.D. Tex. Aug. 22, 2003) (findings and recommendation accepting respondent's

position), *accepted as modified on other grounds,* 2003 WL 22838770, at *1-2 (N.D. Tex. Nov. 24,

2003) (finding the petition untimely whether or not the Court accepts the respondent's position);

*Jimenez v. Cockrell,* No. 4:03-CV-0090-Y, 2003 WL 21321256, at *3 & n.4 (N.D. Tex. May 19,

2003) (findings and recommendation accepting respondent's position), *accepted as modified on other*

*grounds,* 2004 WL 1969824, at *2 (N.D. Tex. Sept. 7, 2004) (finding the petition untimely whether

or not the Court accepts the respondent's position, and specifically noting that it does not reach "the

magistrate judge's recommendation as to the timeliness of the claims arising out of the deferred-

adjudication proceedings").   In recognition of the clear disagreement on this subject, one court

specifically declined to dismiss a federal petition on the basis of respondent's position "until this issue

has been determined by the Fifth Circuit Court of Appeals."[9]   *See Morris v. Dretke,* No. 2:01-CV-

---

[9]   At the time *Morris* was decided, the Fifth Circuit had the issue before it "in *Foreman v. Director,* No. 03-40527." *See Morris v. Dretke,* No. 2:01-CV-0454, 2004 WL 1490100, at *3 (N.D. Tex. July 2, 2004) (report and recommendation), *adopted by* 2004 WL 1672207 (N.D. Tex. July 27, 2004).   The *Foreman* case, however, did not resolve the matter.   *See Foreman v. Dretke,* 383 F.3d 336 (5th Cir. 2004).   The Fifth Circuit now has the issue before it in the consolidated appeals in *Beck v. Dretke,* No. 04-10062; *Caldwell v. Dretke,* No. 03-40927; and *Martinez v. Dretke,* No. 03-20900.   *See Pitts v. Dretke,* No. 3:04-CV-2444-P, 2005 WL 396290, at *2 (N.D. Tex. Feb. 17, 2005) (findings and recommendation noting that, regardless of the outcome of such appeal, the petition before the Court was untimely), *adopted by* 2005 WL 517857 (N.D. Tex. Mar. 4, 2005).

0454, 2004 WL 1490100, at *3 (N.D. Tex. July 2, 2004) (report and recommendation), *adopted by* 2004 WL 1672207 (N.D. Tex. July 27, 2004).

### 2. *Roberts v. Cockrell*

Shortly after *Wilkinson*, in *Roberts v. Cockrell*, 319 F.3d 690 (5th Cir. 2003), the Fifth Circuit considered the timeliness of a federal petition in light of 28 U.S.C. § 2244(d)(1). *See* 319 F.3d at 692-95. It began "by noting that when interpreting the statutory language of 28 U.S.C. § 2244(d)(1)(A), [the federal courts] are not bound by the state law's definition of finality." *Id.* at 693. Although it recognized that the federal courts "look to state law for a determination of how long a prisoner has to file a direct appeal", the court concluded that there is "no reason to look to state law to determine when a state conviction becomes final for the purposes of § 2244(d)(1)(A)" because the statute specifically "provides that a decision becomes final 'by the conclusion of direct review or the expiration of the time for seeking such review.'" *Id.* at 694.

Although not directly on point, *Roberts* suggests that the Fifth Circuit might look to the federal definition of judgment, not the state definition, in determining whether an order of deferred adjudication probation equates to a "judgment of a State court" under § 2244(d). If the Fifth Circuit were to hold that the federal definition of judgment controls, it would then likely look to the definition provided in Fed. R. Civ. P. 54(a).[10] That rule states: "'Judgment' as used in these rules includes a decree and any order from which an appeal lies." Under this definition, appealable orders of deferred adjudication probation would constitute judgments.

---

[10]   Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts provides that the courts may apply the Federal Rules of Civil Procedure to the extent they are "not inconsistent" with the 2254 rules or any statutory provision. Rule 54(a) is neither inconsistent with the habeas rules nor § 2244(d), the relevant federal statute in this instance.

*Roberts* also provides direct guidance as to the meaning of finality under 28 U.S.C. § 2244(d)(1)(A).  *Roberts* specifically holds that § 2244(d)(1)(A) commences the limitations period only upon the expiration of the time for seeking direct review, except when the Supreme Court either rejects a petition for writ of certiorari or rules on its merits.  *See* 319 F.3d at 694.  Although *Roberts* makes clear that federal courts are not bound by state law determinations of finality, it also recognizes that state law guides the federal courts with respect to when the time to seek direct review expires.[11]  *See id.* at 693-94.

### 3. *Conclusion Concerning Timeliness of Claims Challenging Original Plea*

Respondent urges this Court to follow the holding in *Wilkinson*, and find that petitioner's involuntariness of plea and ineffective assistance of counsel claims are untimely.  Since *Wilkinson*, the Fifth Circuit has shed some light on the issue in *Roberts,* although there still may be reason to reject respondent's position on this issue.  As noted above, courts in this district have disagreed regarding the merits of respondent's position, and a consolidated action that addresses the timeliness of a federal petition in the deferred adjudication probation context is currently pending before the Fifth Circuit.  For these reasons, and because the limitations issue does not affect the final outcome of this case since petitioner's claims lack merit and he is therefore entitled to no habeas relief, the Court declines to determine whether to accept or reject respondent's position on this issue.

---

[11]  *Roberts* does not mandate the disregard of state law in all circumstances related to 28 U.S.C. § 2244(d)(1).  *See Salinas v. Dretke*, 354 F.3d 425, 430 n.5 (5th Cir. 2004).  In *Salinas*, the Fifth Circuit recognized that the federal courts properly look to relevant state law to determine whether authorization for a particular type of post-judgment relief arises from the state direct or collateral review process.  *Id.* at 430 & n.5.  Furthermore, *Roberts* itself recognized that the federal courts properly "look to state law for a determination of how long a prisoner has to file a direct appeal."  *See Roberts*, 319 F.3d at 694.  Thus, although the Fifth Circuit might look to federal law to determine whether an order of deferred adjudication probation constitutes a judgment within the meaning of 28 U.S.C. § 2244(d)(1), the court of appeals will look to state law to determine how long a defendant has to engage the direct appeal process afforded under state law.

**B.  Effect of Dismissal of Appeal for Lack of Jurisdiction**

Notwithstanding his position on the timeliness of petitioner's claims challenging his original plea, respondent argues that the instant petition is still untimely because petitioner's appeal of conviction was dismissed for lack of jurisdiction.  Thus, according to respondent, petitioner's judgment of conviction became final on May 30, 2000, the date he pled true to the probation violations and waived his right to appeal as part of a plea agreement for a twelve-year sentence. (Answer at 8-9.)

After the filing of respondent's answer, the Fifth Circuit Court of Appeals addressed how an appeal dismissed for lack of jurisdiction impacts the limitations issue under 28 U.S.C. § 2244(d)(1)(A), which provides that one commencement date for the limitations period is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  In *Foreman v. Dretke*, 383 F.3d 336, 336-41 (5th Cir. 2004), the Fifth Circuit definitively held that a jurisdictional dismissal does not mean that the petitioner failed to pursue "direct review."  *Id.* at 338-41.  If the petitioner engages the direct review process by filing a timely appeal, such appeal delays the finality of the appealed judgment.  *Id.* at 340.

Under *Foreman*, the pendency of petitioner's appeal delays the finality of the appealed judgment.  Thus, petitioner's judgment of conviction did not become final on May 30, 2000, when he pled true and waived his right to appeal.  His timely appeal delayed finality until, at least, the date the court of appeals dismissed the appeal for lack of jurisdiction on May 23, 2001.

**C.  Effect of Extension of Time to File PDR**

Respondent further argues that the instant federal petition is untimely even if the Court includes the time petitioner's appeal remained pending.  (Answer at 9-10.)  Because petitioner filed

no petition for discretionary review, respondent relies upon TEX. R. APP. P. 68.2 to support his argument that the latest that petitioner's judgment of conviction became final is thirty days after the court of appeals dismissed the appeal for lack of jurisdiction.  (*Id.* at 9.)

TEX. R. APP. P. 68.2(a) indeed provides a thirty-day deadline for filing a petition for discretionary review.  However, Rule 68.2(c) provides for extensions of time to file such a petition.  Moreover, in *Roberts v. Cockrell*, 319 F.3d 690 (5th Cir. 2003), the Fifth Circuit specifically held that, when a defendant stops the appeal process before obtaining a ruling from the United States Supreme Court in the form of a rejection of a petition for certiorari or a ruling on the merits, his "conviction becomes final when the time for seeking further direct review in the state court expires."  *Id.* at 694. When the petitioner has obtained an extension of time to file a petition for discretionary review, such extension necessarily extends the time for seeking further direct review and thus delays the finality of the judgment of conviction under 28 U.S.C. § 2244(d)(1)(A) at least until the expiration of the deadline for filing the petition for discretionary review.  *See Valdez v. Dretke*, No. 3:02-CV-1755-L, 2004 WL 2847829, at *2 (N.D. Tex. Dec. 9, 2004), *accepted by* 2005 WL 177844 (N.D. Tex. Jan. 26, 2005); *Hogue v. Dretke*, No. 3:04-CV-0716-K, 2004 WL 330591, at *2 (N.D. Tex. Feb. 23, 2004), *accepted by* 2004 WL 1179326 (N.D. Tex. Mar. 26, 2004).  Of course, if the petitioner files a petition for discretionary review within the deadline established by Rule 68.2(a) or a granted extension of time, the finality of the judgment of conviction is further delayed.

In this instance, petitioner obtained an extension of time to file a petition for discretionary review.  Although he failed to file such a petition, the time for seeking further direct review in the state court did not expire until that deadline elapsed on August 21, 2001.  Thus, petitioner's judgment of conviction became final on August 21, 2001, and that date commences the one-year

14

limitations period.[12]  Petitioner then used 202 days of the limitations period prior to filing his state

application for writ of habeas corpus on March 11, 2002.  That filing statutorily tolled the limitations

period until the Texas Court of Criminal Appeals denied the petition on September 18, 2002.

Petitioner used another 107 days before he filed the instant federal petition by placing it in the prison

mail system on January 3, 2003.  Under these calculations, the instant petition is timely by nearly

two months.  The Court thus proceeds to the merits of petitioner's claims.[13]

## IV.  JURISDICTION OF TRIAL COURT

Petitioner claims that the trial court lacked jurisdiction to convict him because, although the

indictment listed Dallas County as the location of the crime, the evidence presented proved that

Denton County was the actual crime location.  (*See* Mem. at Ground 1.)

"The sufficiency of a state indictment is not a matter for federal habeas corpus review unless

it can be shown that the indictment is so defective that the convicting court had no jurisdiction."

*Alexander v. McCotter*, 775 F.2d 595, 598 (1985).  Federal courts, nevertheless, will not consider

claims that a state indictment is insufficient to confer jurisdiction upon the trial court when the issue

"was squarely presented to the highest court of the state" and it can reasonably be inferred that the

court passed on the merits of the sufficiency issue.  *Id.* at 598-99.  In a habeas proceeding, this Court

does not sit in review of a state court's interpretation of its own law.  *Creel v. Johnson*, 162 F.3d 385,

395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995).

---

[12]  No party suggests that any subparagraph other than § 2244(d)(1)(A) commences the period of limitations.

[13]  The Court addresses the claims in a different order than presented to it because the resolution of some claims are
somewhat dependent upon resolution of earlier-considered claims.

Petitioner raised this issue in his state writ.  *See* S.H. Tr. at 8.  The Texas Court of Criminal Appeals denied that writ on the findings of the trial court.  *See Ex parte Howington*, No. 51,307-02, slip op. at 1 (Tex. Crim. App. Sept. 18, 2002).  The trial court specifically found that the testimony presented to it indicated that petitioner "sexually abused his step daughter for a number of years in both the Colony, in Denton County, and in the city of Irving, in Dallas County."  S.H. Tr. at 91.  The trial court further found that the crime occurred in Irving, and the court thus had jurisdiction over the offense.  *Id.* at 91-92.  This Court will not review that explicit finding.[14]  *See Alexander*, 775 F.2d at 598-99.  Thus, this claim entitles petitioner to no federal habeas relief.

## V.  VOLUNTARINESS OF PLEA

In this case, petitioner asserts that his plea of *nolo contendere* to the charge against him was not knowing or voluntary based on his lack of understanding of an element of the offense and his appellate rights as well as the ineffective assistance of counsel.  (Mem. at Grounds 3, 4, and 6.)  He further claims that he believed that he was pleading to an offense that occurred in Denton County.  (*Id.* at Ground 3.)  He also claims that the trial court misinformed him about his appellate rights, and that such misinformation makes his plea involuntary.  (*Id.* at Ground 4.)

---

[14]  The Court notes that petitioner testified at his plea hearing on November 19, 1992, that the offenses occurred in both Denton and Dallas Counties.  *See* SF-II at 10-12.  Petitioner specifically testified that criminal conduct occurred in Irving, Dallas County, Texas.  *Id.* at 12.

16

### A.  Legal Principles

A plea of guilty or *nolo contendere* waives a number of constitutional rights.[15]  *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *Joseph v. Butler*, 838 F.2d 786, 789 (5th Cir. 1988).  Thus, the Fourteenth Amendment Due Process Clause imposes certain requirements to ensure the validity of such a plea.  *Fischer v. Wainwright*, 584 F.2d 691, 692 (5th Cir. 1978) (citing *Brady v. United States*, 397 U.S. 742 (1970); *Boykin*, 395 U.S. 238; *Johnson v. Zerbst*, 304 U.S. 458 (1938)).  "*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead . . . was voluntarily and intelligently made."  *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000).  In addition, "the voluntary and intelligent nature of the plea [must] be apparent on the face of the record."  *See Holloway v. Lynaugh*, 838 F.2d 792, 793 (5th Cir. 1988).  *Boykin* also sets out "the contemporary standards for plea bargain admonishments."[16]  *See United States v. Barlow*, 17 F.3d 85, 89 (5th Cir. 1994).

A plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'"  *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady*, 397 U.S. at 748).  "The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'"  *Fischer v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749).  Pleas are involuntary when induced by threats, improper promises, deception, or misrepresentation.  *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).  A plea qualifies as intelligent when the criminal defendant enters it after receiving "'real notice of the true nature of the charge against him, the first

---

[15]  In general, the law applicable to guilty pleas is equally applicable to pleas of *nolo contendere*.  *Matthew v. Johnson*, 201 F.3d 353, 360 n.9 (5th Cir. 2000); *Carter v. Collins*, 918 F.2d 1198, 1200 n.1 (5th Cir. 1990).

[16]  Fed. R. Crim. P. 11(c) "codifies" the *Boykin* admonishments.  *See* Fed. R. Crim. P. 11(c) advisory committee's note on 1974 amendments.

and most universally recognized requirement of due process.'" *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). "Before the trial court may accept a guilty plea, the court must ensure that the defendant 'has a full understanding of what the plea connotes and of its consequence.'" *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991) (quoting *Boykin*, 395 U.S. at 244). "A guilty plea is invalid if the defendant does not understand the nature of the constitutional protection that he is waiving or if he has such an incomplete understanding of the charges against him that his plea cannot stand as an admission of guilt." *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995) (citing *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976)). In determining whether a plea is voluntary and intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor*, 933 F.2d at 329.

A prisoner may not generally "collaterally attack a voluntary and intelligent" plea. *Id.* "A federal court will uphold a guilty plea challenged in a habeas corpus proceeding if the plea was knowing, voluntary and intelligent." *James*, 56 F.3d at 666. A guilty plea "entered by one fully aware of the direct consequences . . . must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes)." *See Brady*, 397 U.S. at 755. "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981) (per curiam). "When considering challenges to guilty plea proceedings, [the courts] have focused on

18

three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea."[17] *United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993). The consequences of a guilty plea means only that the defendant knows "the maximum prison term and fine for the offense charged." *Ables v. Scott*, 73 F.3d 591, 592 n.2 (5th Cir. 1996) (internal quotations omitted).

Under these principles of law, the Court thus considers whether petitioner's plea was voluntarily and intelligently made.

## B. November 19, 1992 Plea Hearing

Petitioner appeared before the trial judge and pled "no contest" or *nolo contendere* to the charge of aggravated sexual assault on November 19, 1992. *See* SF-II at 6. He signed a form entitled "Court's Admonition of Statutory and Constitutional Rights and Defendant's Acknowledgment," which stated: "You are charged with the crime of aggravated sexual assault and the range of punishment is 5-99 [years] or life." TR at 11. The form further stated that recommendations of punishment would not bind the court, but that the court would follow the plea agreement, if able; if unable to do so, the court would allow petitioner to withdraw the plea. *Id.* ¶ 2. The form admonished that petitioner could not appeal without permission of the court, unless the court imposed a punishment greater than the one agreed to by the petitioner. *Id.* ¶ 3. It further admonished petitioner about consequences relating to being a non-United States citizen, his rights if he had

---

[17] The core concerns recognized by the Fifth Circuit Court of Appeals are addressed by the admonishments contained in Article 26.13 of the Texas Code of Criminal Procedure. The Fifth Circuit has held that the admonishments under Rule 11 of the Federal Rules of Criminal Procedure provide "prophylactic protection for the constitutional rights involved in the entry of a guilty plea." *United States v. Gracia*, 983 F.2d 625, 627 (5th Cir. 1993). The requirements of Rule 11 and Article 26.13 are substantially similar. *Compare* Fed. R. Crim. P. 11 *with* Tex. Code Crim. Proc. Ann. art. 26.13. It therefore follows that the same "prophylactic protections" attach to the admonishments under Article 26.13 as under Rule 11.

court-appointed counsel, and effects of probation violations on deferred adjudication.  *Id.* ¶¶ 4-6.
The trial court specifically admonished petitioner:

> If you receive deferred adjudication and a violation of probation occurs, you may be
> arrested, detained, and a hearing conducted, limited to the determination of whether
> the court should proceed to adjudication of guilt on the original charge or not.  No
> appeal may be taken from this determination.  If there is an adjudication of guilt, all
> proceedings, including assessment of punishment, pronouncement of sentence,
> granting of probation, and your right to appeal continue as if the adjudication of guilt
> had not been deferred.  If there is an adjudication of guilt, the full range of punish-
> ment would be applicable to your case.

*Id.* ¶ 6.  The Acknowledgment section of this form provided:  "I have read the above and foregoing
admonitions by the Court regarding my rights.  I understand the admonitions, and I understand and
am aware of the consequences of my plea.  Furthermore, my lawyer has explained to me all of the
admonitions given by the Court in this document."  *Id.* at 11.

Petitioner also signed a form entitled "Defendant's Waivers and Judicial Confession" in
which he stated that he understood the charge against him, that he had been advised of the conse-
quences of his plea, that he waived his right to remain silent and confrontation and cross-exam-
ination of witnesses, that he consented to an oral or written stipulation of the evidence and testi-
mony, and that he agreed to the introduction of testimony by affidavit, written statements of wit-
nesses, a judicial confession, and any other documentary evidence.  *Id.* at 7-8.  He further admitted
and judicially confessed that he was the person named in the indictment and that he understood the
charge contained therein.  *Id.* at 8.  He also specifically indicated that he was pleading *nolo contendere*
to the offense of aggravated sexual assault.  *Id.*  Defense counsel indicated that he had consulted
with petitioner concerning his plea and had advised him of his rights and the charge to which he was
pleading.  *Id.*

Petitioner also signed a form entitled "Judicial Confession" in which he specifically indicated that he was pleading guilty to an aggravated sexual assault that occurred in Dallas County. *Id.* at 10. He confessed that, on August 1, 1988, in Dallas County, Texas, he

> unlawfully then and there knowingly and intentionally cause[d] the contact and penetration of the female sexual organ of . . . a child, by . . . [his] finger . . . and unlawfully then and there knowingly and intentionally cause[d] the sexual organ of . . . a child, to contact and penetrate [his] mouth . . . and at the time of the commission of this offense, the child was younger than 14 years of age.

*Id.*

Before the trial court accepted petitioner's plea his attorney and the court examined petitioner. *See* SF-II at 5-19. The trial court orally admonished petitioner of the punishment range, including the possibility of a fine not to exceed $10,000. *Id.* at 5. Petitioner indicated that he had discussed the indictment and the documents that he signed with his attorney. *Id.* He indicated that he understood all of his rights and the waivers contained within the signed documents. *Id.* at 5-6. Petitioner thereafter entered his plea of "no contest", and the trial court accepted such plea. *Id.* at 6, 54. He testified that wrongful conduct occurred in Irving. *Id.* at 12. He testified that he did not want to go to prison and that some sort of probation would be best for him. *Id.* at 14-15. He testified that he moved back to Texas so that he "would have a chance at getting probation" because his former state of residence would not permit deferred probation.[18] Although he was entering a plea of no contest, he specifically testified that he "in fact, cause[d] [his] mouth to contact and penetrate [the victim's] vagina" and caused his finger to "penetrate her vagina." *Id.* at 18.

---

[18] Petitioner had moved to Kansas approximately two years prior to entering his plea, but moved back to Texas to face the charges against him. SF-II at 13.

The record simply does not support a finding that petitioner's plea was involuntary. The totality of the circumstances reflects that petitioner had a clear understanding of the proceedings against him, the nature of the offense for which he was charged, and the consequences of entering his plea. He indicated that he understood all of his rights and waivers contained in the various documents that he signed. It appears that he fully understood that he was pleading guilty to an offense that occurred in Dallas County, Texas. The indictment indicated that the offense occurred in Dallas County. Petitioner indicated that he read and understood the indictment. Furthermore, petitioner pled guilty in a Dallas County court.

## C.   Presumption

Petitioner has not overcome the presumption of verity accorded solemn declarations made in open court. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (holding that "[s]olemn declarations in open court carry a strong presumption of verity [and] [t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal"). He has not overcome the presumption of regularity and "great weight" accorded state-court records. *See Bonvillian v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that state-court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that state-court records "are entitled to a presumption of regularity").

Given the totality of the circumstances, it is evident that petitioner fully understood the charge against him and the consequences of his plea. Thus, his plea appears knowing, intelligent, and voluntary. Any misunderstanding that he may have had with respect to his appellate rights does not render his plea involuntary. Unless petitioner's specific claims of ineffective assistance of counsel

impacted his decision to plead *nolo contendere*, the Court should find that petitioner entered his plea knowingly, intelligently, and voluntarily.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner contends that his attorney rendered ineffective assistance by falsely telling him "that if he admitted to his crimes in open court, Denton would not seek a conviction and this would be the end of his problems." (Mem. at Ground 3.)  He also contends that his attorney rendered ineffective assistance by failing to (a) investigate laws and statutes applicable to his case; (b) to ensure that the case was in the proper jurisdiction; (c) to object to the trial court's lack of jurisdiction; (d) to explain his appellate rights; (e) to object when the trial court improperly admonished him about his appellate rights; and (f) explain that jail time may be imposed as a condition of probation and that he had thirty days to move for adjudication and appeal once he was placed on deferred adjudication probation.  (*Id.* at Ground 5.)  He further contends that an attorney who has made all of these errors cannot competently advise a client about entering a plea.  (*Id.*)

To successfully state a claim of ineffective assistance of counsel under existing precedent of the United States Supreme Court, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The *Strickland* test applies when a petitioner alleges he was denied effective assistance of counsel in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). "[I]n a guilty plea scenario, a petitioner must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error." *See Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000). To determine whether counsel's performance is constitutionally deficient courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

When a prisoner challenges his plea based on ineffective assistance of counsel, the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 58. To satisfy this requirement in the plea context, the prisoner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96.

A guilty plea is "open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-771 (1970)). With respect to such pleas, "[c]ounsel is needed so that the accused may know precisely what he is doing, so that he is fully aware of the prospect of going to jail or prison, and so that he is treated fairly by the prosecution." *Argersinger v. Hamlin*, 407 U.S. 25, 34 (1972). However, once a criminal defendant enters a knowing, intelligent, and voluntary guilty plea, all non-jurisdictional defects in the proceedings below are waived except for claims of ineffective assistance of counsel relating to the voluntariness of the plea. *United States v. Glinsey*,

24

209 F.3d 386, 392 (5th Cir. 2000); *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *Smith v.*

*Estelle*, 711 F.2d 677, 682 (5th Cir. 1983).

> When a criminal defendant has solemnly admitted in open court that he is in fact
> guilty of the offense with which he is charged, he may not thereafter raise independ-
> ent claims relating to the deprivation of constitutional rights that occurred prior to
> the entry of the guilty plea.  He may only attack the voluntary and intelligent char-
> acter of the guilty plea by showing that the advice he received from counsel was not
> within the standards set forth in *McMann*.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

## A.  Claims Directly Related to Voluntariness of Plea

In this instance, petitioner raises one claim of ineffective assistance of counsel that specif-

ically relates to the voluntariness of his plea, *i.e.*, the claim that his attorney lied to him about future

prosecution in Denton County.  Even if the Court assumes that counsel told petitioner that Denton

County would not prosecute him, this claim fails unless petitioner can show that there is a reasonable

probability that, but for such misinformation, he would not have pleaded *nolo contendere* and would

have insisted on going to trial.

Petitioner has not shown such a reasonable probability.  Although he faced five to ninety-

nine years imprisonment on the charged offense, *see* TR at 11, he pled *nolo contendere* so that he

might get deferred adjudication probation, SF-II at 16.  He entered into an open plea agreement that

contained no provision which precluded the State from prosecuting petitioner in Denton County.

*See* TR at 9.  His testimony at the plea hearing exhibits a great desire to obtain probation and

counseling.  *See* SF-II at 7-19.  He specifically moved back to Texas from Kansas to face the charges

against him because deferred probation was not a possibility in Kansas, and he at least had some

chance for probation in Texas.  *Id.* at 13-16.  In addition, at the time of his plea hearing, petitioner's

son was "the most important thing" to him, and probation gave him the best opportunity to see him. *Id.* at 15. He testified that he did not "want to go to prison." *Id.* at 14. Although he pled *nolo contendere*, he testified that he indeed sexually assaulted his step-daughter while she was under the age of fourteen. *Id.* at 18. Under these circumstances, the alleged misinformation regarding prosecution in Denton County creates no reasonable probability that petitioner would have insisted on going to trial in Dallas County. The alleged misinformation, furthermore, does not make petitioner's plea involuntary, unknowing, or unintelligent. This claim of ineffective assistance of counsel entitles petitioner to no federal habeas relief.

## B.  Other Pre-plea Claims

Petitioner also contends that his attorney failed to (a) investigate laws and statutes applicable to his case; (b) to ensure that the case was in the proper jurisdiction; (c) to object to the trial court's lack of jurisdiction; (d) to explain his appellate rights; (e) to object when the trial court improperly admonished him about his appellate rights; and (f) explain that jail time may be imposed as a condition of probation and that he had thirty days to move for adjudication and appeal once he was placed on deferred adjudication probation. He attempts to connect these alleged deficiencies of counsel to the voluntariness of his plea by contending that an attorney who has made these errors cannot competently advise a client about entering a plea.

To the extent the alleged deficiencies of counsel occurred prior to his petitioner's plea and do not affect the jurisdiction of the trial court or the voluntariness of the plea, these claims were waived by petitioner's knowing, intelligent, and voluntary plea. *See United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000). In addition, to the extent these claims survive the waiver associated with a voluntary plea, they fail because petitioner has not affirmatively shown prejudice. Like the claim

of misinformation about prosecution in Denton County, petitioner has not shown a reasonable probability that, but for counsel's errors, he would not have pleaded *nolo contendere* and would have insisted on going to trial.

In light of the circumstances of this case as set forth in the preceding section, the Court finds no reasonable probability that, had counsel provided errorless representation, petitioner would have insisted on going to trial on the charged offense. Such insistence is inconsistent with petitioner's desire to be placed on deferred adjudication probation and his desire to see his son. Petitioner has thus shown no ineffective assistance of counsel that rendered his plea involuntary or unknowing.

**C. State Court Consideration of Claims**

Petitioner raised his ineffective assistance of counsel claims in his state writ. S.H. Tr. at 10, 51-59. The Texas Court of Criminal Appeals denied that writ on the findings of the trial court and thus adjudicated the claims on the merits. *See Ex parte Howington*, No. 51,307-02, slip op. at 1 (Tex. Crim. App. Sept. 18, 2002). The trial court found no ineffective assistance of counsel. S.H. Tr. at 93-94. The decision of the state courts with respect to petitioner's ineffective assistance claim is consistent with *Strickland*, the applicable Supreme Court precedent. The decision involved no unreasonable application of such precedent. The adjudication of the claim did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court.

## VII. INSUFFICIENCY OF EVIDENCE

Petitioner also claims that the State failed to prove an essential element of the offense, namely that the offense occurred in Dallas County. (Mem. at Ground 2.) This claim fails for two reasons. First, evidence of record does show that petitioner sexually assaulted his stepdaughter in

Dallas County.  *See* SF-II at 12 (testimony of petitioner that unlawful conduct occurred in Irving).

Moreover, petitioner's voluntary plea relieved the State of its Constitutional burden to put forth

evidence sufficient to sustain his conviction.  As already discussed, his plea was knowing, intelligent,

and voluntary.  By entering said plea petitioner has, therefore, waived his right to demand any evi-

dence to sustain his conviction.  *See United States v. Broce*, 488 U.S. 563, 569 (1989) (holding that

"when the judgment of conviction upon a guilty plea has become final and the offender seeks to

reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both

counseled and voluntary").  A "failure of the Texas state court to require evidence of guilt corrobor-

ating a voluntary plea" raises "[n]o federal constitutional issue."  *Smith v. McCotter*, 786 F.2d 697,

702 (5th Cir. 1986) (quoting *Baker v. Estelle*, 715 F.2d 1031, 1036 (5th Cir.1983)).  The "mandate

that sufficient evidence exist from which a rational fact finder could find guilt beyond a reasonable

doubt is inapplicable to convictions based on a . . . plea."  *Id.* at 702-03.  Accordingly, this claim is

not proper for federal habeas review.

## VIII.  DENIAL OF DIRECT APPEAL

Petitioner claims that he was denied due process and equal access because he was denied a

direct appeal upon issues related to his original plea proceeding.  (*See* Mem. at Ground 4.)  He

asserts that, at his plea hearing of November 19, 1992, the trial court misled him about his appellate

rights.  (*Id.*)  He contends that the erroneous admonishments of the trial court caused him to enter

an involuntary and unknowing plea.  (*Id.*)

### A.    Waiver of Appellate Rights

"The right to appeal a criminal conviction is a statutory right, not a constitutional right."

*United States v. Henderson*, 72 F.3d 463, 464-65 (5th Cir. 1995) (citing *Abney v. United States*, 431

U.S. 651, 656 (1977)); *accord Lawrence v. Lensing*, 42 F.3d 255, 258 (5th Cir. 1994). In Texas, "the right to appeal does not exist at all unless authorized by statute." *Watson v. State*, 924 S.W.2d 711, 713 (Tex. Crim. App. 1996) (*en banc*). Texas "has long expressly permitted appeals from convictions in criminal cases." *Id.* (citing TEX. CODE CRIM. PROC. art. 44.02). In 1987, Texas made orders of deferred adjudication probation appealable. *Id.* at 713-14. Under the laws of Texas, "a defendant placed on deferred adjudication community supervision may raise issues relating to the original plea proceeding, such as evidentiary sufficiency, only in appeals taken when deferred adjudication community supervision is first imposed." *Manuel v. State*, 994 S.W.2d 658, 661-62 (Tex. Crim. App. 1999) (*en banc*). Appeals from orders of deferred adjudication probation are restricted in accordance with TEX. R. APP. PROC. 40(b)(1), now codified as TEX. R. APP. PROC. 25.2(a)(2).[19] *Id.* at 662; *Watson*, 924 S.W.2d at 713. Furthermore, "[a] defendant may waive statutory rights, including the right to appeal, as part of a plea bargaining agreement." *Henderson*, 72 F.3d at 465. "However, the right to appeal, having been established by the law of the State of Texas, may not be abrogated or otherwise administered in a way which denies an appellant of the constitutional right to due process or equal protection." *Able v. Bacarisse*, 131 F.3d 1141, 1143 (5th Cir. 1998).

Once a criminal defendant enters a knowing, intelligent, and voluntary plea, all non-jurisdictional defects in the proceedings below are waived except for claims of ineffective assistance of counsel relating to the voluntariness of the plea. *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir.

---

[19]  Rule 25.2(a)(2) provides:
    In a plea bargain case – that is, a case in which defendant's plea is guilty or nolo contendere and the punishment did not exceed the punishment recommended by the prosecutor and agreed to by the defendant – a defendant may appeal only:
        (A) those matters that were raised by written motion filed and ruled on before trial, or
        (B) after getting the trial court's permission to appeal.

2000). As already determined by the Court, any misunderstanding that petitioner may have had with respect to his appellate rights due to the written admonishments given by the trial court prior to his 1992 plea did not make his plea involuntary. Furthermore, the alleged defective admonishments do not affect the jurisdiction of the trial court. Therefore, once petitioner voluntarily pled to the charge against him, he waived any claim related to the written admonishments given by the trial court.

**B.**   **No Showing of Due Process and Equal Access Violations**

In addition, petitioner has shown no due process or equal access violation. The record in this case shows that petitioner was properly admonished about his appellate rights. He signed a form which states:

> I further understand that where there is a plea bargain agreement and the punishment assessed by the Court does not exceed the agreed recommendation, I do not have the right to appeal without permission of the Court, except for those matters raised by written motions filed an presented to the Court prior to trial.

TR at 8. Such admonishment is consistent with state law related to appeals after a plea. The trial court further admonished petitioner:

> If you receive deferred adjudication and a violation of probation occurs, you may be arrested, detained, and a hearing conducted, limited to the determination of whether the court should proceed to adjudication of guilt on the original charge or not. No appeal may be taken from this determination. If there is an adjudication of guilt, all proceedings, including assessment of punishment, pronouncement of sentence, granting of probation, and your right to appeal continue as if the adjudication of guilt had not been deferred. If there is an adjudication of guilt, the full range of punishment would be applicable to your case.

*Id.* at 11. This admonishment accurately summarizes TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(b). Because petitioner entered into an open plea bargain agreement, *see* TR at 9, the trial court could not assess punishment in excess of any agreed recommendation. Petitioner thus had no right

30

to appeal without permission of the Court. Nothing of record reflects that he obtained such permission. Petitioner's claimed due process and equal access violations thus entitle him to no habeas relief.

## C.   State Court Consideration of Claims

Petitioner raised this issue in his state writ. *See* S.H. Tr. at 10. The Texas Court of Criminal Appeals denied that writ on the findings of the trial court. *See Ex parte Howington*, No. 51,307-02, slip op. at 1 (Tex. Crim. App. Sept. 18, 2002). The trial court specifically found that petitioner was not denied his right to appeal. S.H. Tr. at 94. Such finding is not inconsistent with any applicable Supreme Court precedent. The finding involved no unreasonable application of such precedent. The adjudication of the claim did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court.

## IX.   EX POST FACTO VIOLATION

Petitioner also claims that the trial court violated the prohibition on ex post facto laws when it imposed a term of imprisonment as a condition of probation. (Mem. at Ground 5.) He contends that TEX. CODE CRIM. PROC. ANN. art. 42.12, § 12(a) has been retroactively applied to him in violation of the Constitution. (*Id.*) He contends that, at the time of his offense in 1988, the applicable statute (Article 42.12, § 6b(a)) permitted no more than thirty days imprisonment as a term of probation, whereas § 12(a) permits up to 180 days imprisonment as a term of probation (*Id.*)

## A.   "In Custody" Requirement

This claim is not cognizable under 28 U.S.C. § 2254. Section 2254(a) provides that the federal courts "shall entertain an application for writ of habeas corpus in behalf of a person in custody pursuant to a judgment of a State court only on the ground that he is in custody in violation

of the Constitution or laws or treaties of the United States." While petitioner is undoubtedly in custody pursuant to a judgment of a State court and while he clearly alleges a violation of the United States Constitution's prohibition on ex post facto laws, it is clear that he is not currently in custody in violation of the prohibition on ex post facto laws. Although the trial court imposed a ninety-day jail term as a condition of probation in 1992, petitioner is no longer in custody on that condition of probation. On January 5, 1993, the trial court released him from further incarceration as a condition of probation. *See* TR at 5. Furthermore, because the trial court revoked petitioner's probation, petitioner is no longer subject to any condition of probation.[20] Consequently, petitioner is not currently in custody due to any violation of the ninety-day imprisonment condition of probation.

**B.    No Showing of Violation of Ex Post Facto Clause**

Even if the Court were to find this claim cognizable, it would find no violation of the prohibition on ex post facto laws. Article I, § 10, of the United States Constitution prohibits a State from passing any "ex post facto Law." To constitute a violation of the Ex Post Facto Clause a change in law "must be both retroactive and to a prisoner's detriment." *See Hallmark v. Johnson*, 118 F.3d 1073, 1077-78 (5th Cir. 1997); *see also Lynce v. Mathis*, 519 U.S. 433, 441 (1997) ("To fall within the ex post facto prohibition, a law must be retrospective – that is, 'it must apply to events occurring before its enactment' – and it 'must disadvantage the offender affected by it,' by altering the definition of criminal conduct or increasing the punishment for the crime.")

> Finally, even if a law operates to the defendant's detriment, the ex post facto prohibition does not restrict "legislative control of remedies and modes of procedure which do not affect matters of substance." Hence, no ex post facto violation occurs if the

---

[20]  Because the trial court credited petitioner's current term of imprisonment for the time he spent incarcerated as a condition of probation, *see* TR at 30, petitioner has no claim that he will have to serve more than the twelve year sentence imposed upon the revocation of his probation.

change in the law is merely procedural and does "not increase the punishment, nor change the ingredients of the offence or the ultimate facts necessary to establish guilt."

*Miller v. Florida*, 482 U.S. 423, 433 (1987) (citations omitted).

In this case, the trial court applied the law as it existed when it imposed probation in 1992. At that time, state law permitted the courts to impose up to 180 days imprisonment as a condition of probation. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 12(a) (Vernon Supp. 2004-05). Consequently, because no law was applied retroactively to petitioner's detriment, petitioner has stated no viable ex post facto violation.

In addition, § 12(a) appears to be a legislative mode of procedure that does not affect matters of substance. It does not increase the punishment associated with the charged offense. It does not change the essential elements of the charged offense. Nor does it change the ultimate facts necessary to establish guilt. Section 12(a) merely constrains the broad discretion of the state courts to impose reasonable conditions of probation on those whom are deemed suitable for release on probation or community supervision. It sets the outer parameters for an imprisonment condition of probation at the time such condition is imposed. For these reasons, the complained-of statute does not constitute a prohibited ex post facto law.

## C.   State Court Consideration of Claim

Petitioner raised his ex post facto claim in his state writ. S.H. Tr. at 9. The Texas Court of Criminal Appeals denied that writ on the findings of the trial court and thus adjudicated the claims on the merits. *See Ex parte Howington*, No. 51,307-02, slip op. at 1 (Tex. Crim. App. Sept. 18, 2002). The trial court found no ex post facto violation. *See* S.H. Tr. at 93-94. The decision of the state courts with respect to petitioner's ex post facto claim is not inconsistent with applicable Supreme

33

Court precedent. The decision involved no unreasonable application of such precedent. The adjudication of the claim did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court.

For all of these reasons, petitioner's ex post facto claim entitles him to no federal habeas relief.

## X.  EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## XI.  RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED this 10th day of May, 2005.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

34

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

35